Wm. Joyce McTIGHE, Executor under the Will of Harry J. Hirshman, also known as H. J. Hirshman, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 18339.

United States District Court
W. D. Pennsylvania.

Sept. 1, 1960.

---

1. Edwards v. United States, 312 U.S. 473, 480, 61 S.Ct. 669, 85 L.Ed. 957; Martin v. State of Texas, 200 U.S. 316, 319, 26 S.Ct. 338, 50 L.Ed. 497.

MARSH, District Judge.

The facts as disclosed by the pleadings and stipulated by the parties, except as hereinafter specified, are adopted by the court as if found pursuant to Rule 52, Fed.R.Civ.P., 28 U.S.C.A.

Summarizing the facts, it appears that Harry J. Hirshman was employed by the National Tube Company, a division of the United States Steel Corporation. While so employed on June 19, 1951, he received a stock option for the purchase of 450 shares of common stock of the United States Steel Corporation. At the time the stock option was granted, the fair market value of one share of common stock of United States Steel Corporation was $41.

Hirshman retired from his employment with National Tube Company in June, 1953, and died on April 15, 1955, as owner of the option but without having exercised it. On May 4, 1955, plaintiff, Wm. Joyce McTighe, Esq., the Executor of the Estate of Harry J. Hirshman and the taxpayer in this case, exercised the option, at which time the market value of the stock was $85.50 per share.

The plaintiff filed a fiduciary income tax return for the Estate of Harry J. Hirshman for the year 1955 and included therein as ordinary income $19,181.25, which was the difference between the option price of $41 per share and the alleged market value of $83.625 per share for the 450 shares of stock on the day the option was exercised. By October 14, 1957, all of the taxes and interest due on the 1955 fiduciary return for the Estate of Harry J. Hirshman had been paid. Subsequently, the plaintiff filed a claim for refund of the entire amount of tax and interest paid for the year 1955, totalling $4,547.36. The claim for refund was disallowed to the extent of $4,-384.74 and this suit followed.[1]

Thomas L. Wentling, of Patterson, Crawford, Arensberg & Dunn, Pittsburgh, Pa., for plaintiff.

Daniel Snyder, Asst. U. S. Atty., Ralph F. Scalera, Asst. U. S. Atty., Pittsburgh, Pa., Melwyn S. Mozinski, Special Counsel Dept. of Justice, Washington, D. C., for defendant.

1. In his claim for refund and in his complaint the plaintiff asserts several grounds in support of his contention that he is entitled to a refund of the entire amount of tax and interest paid for the year 1955; however, in his brief and in oral argument he has pressed only the argument concerning the interpretation of § 421 of the Internal Revenue Code of 1954 and has not attempted to substantiate any other ground.

■ Plaintiff contends, the defendant concedes; and we find that the stock option in question was a "restricted stock option" within the meaning of subsection 421(d) (1) of the Internal Revenue Code of 1954, 26 U.S.C. § 421(d) (1);[2] therefore, the only question here involved is whether on May 4, 1955, when the plaintiff Executor exercised the option, the Estate of the decedent was entitled to the "no income" benefit provided in subsection 421(a) (1) of the 1954 Internal Revenue Code. We think the Estate was not so entitled.

Subsection 421(a) provides in part as follows:

"(a) *Treatment of restricted stock options.*—If a share of stock is transferred to an individual pursuant to his exercise after 1949 of a restricted stock option, and no disposition of such share is made by him within 2 years from the date of the granting of the option nor within 6 months after the transfer of such share to him—

"(1) no income shall result at the time of the transfer of such share to the individual upon his exercise of the option with respect to such share:

\*   \*   \*   \*   \*   \*

"This subsection \* \* \* shall not apply unless (A) the individual, at the time he exercises the restricted stock option, is an employee of either the corporation granting such option, a parent or subsidiary corporation of such corporation, or a corporation or a parent or subsidiary of such corporation issuing or assuming a stock option in a transaction to which subsection (g) is applicable, or (B) the option is exercised by him within 3 months after the date he ceases to be an employee of such corporations."

The parties agree that if Harry J. Hirshman had not died and had exercised the option on May 4, 1955, he would not have been entitled to the benefits provided by subsection 421(a) (1) for he was not then an employee of United States Steel Corporation, or a parent or subsidiary thereof, and had ceased to be such an employee more than three months prior to that date.

The plaintiff, however, relying on subsection 421(d) (6) (A) (i) contends that since the option was exercised by the Executor of the Estate of Hirshman, the Estate is to be "treated differently than the individual in exercising the restricted stock option" and is entitled, so plaintiff says, to the "no income" benefit granted in subsection 421(a) (1).

Subsection 421(d) (6) (A) (i) provides:

"(6) *Exercise by estate.*—

"(A) *In general.*—If a restricted stock option is exercised subsequent to the death of the employee by the estate of the decedent, or by a person who acquired the right to exercise such option by bequest or inheritance or by reason of the death of the decedent, the provisions of this section shall apply to the same extent as if the option had been exercised by the decedent, except that—

"(i) the holding period and employment requirements of subsection (a) shall not apply \* \* \*."

It is to be noted that the death referred to is that of an employee-optionee. When Hirshman died, he had been retired for approximately 22 months.

The difficulty with plaintiff's contention, as we see it, is that the subsection expressly limits the application of the provisions of § 421, which include the "no income" benefit granted by subsection 421(a) (1), *"to the same extent as if the option had been exercised by the*

---

2. The stipulation of facts did not specifically state that the option was a "restricted stock option", but the parties obviously agree that it was; see page

7 of the defendant's brief and item 3 of defendant's proposed Conclusions of Law, and the plaintiff's complaint and page 2 of plaintiff's brief.

*decedent"*, except that the holding period, i.e., two years from the date of granting the option and six months from the transfer of the stock, and the employment requirements, i.e, that the individual exercising the option must be an employee of the corporation granting, issuing, or assuming the stock option, or of its parent or a subsidiary, shall not apply.

It being conceded that Hirshman would not have been entitled to the "no income" benefit had he exercised the option 22 months after he had retired as an employee, we think that his Executor is no more entitled to the "no income" benefit than was his decedent. The only advantages that Hirshman's Executor acquired by virtue of the subsection were that he was not required to be an employee in order to exercise the option nor was he required to hold the stock six months after its transfer to him. We do not rely on the Treasury Regulations to reach our conclusion.

Neither side has cited any judicial authority construing subsection 421(d) (6) (A) (i) and we have found none; however, the legislative history clearly points out its limited purpose and scope.

The House Report, 3 U.S. Code Cong. & Adm. News 4017, 4293 (1954) [3], states:

"The sixth change is found in section (d) (6) and is intended to provide definite rules for the exercise of restricted stock options after the death of the employee * * *. *This paragraph provides that the estate or beneficiary shall receive the same treatment the employee would have received had he lived and exercised the option.* However, the estate is not required to be an employee at the time the option is exercised nor is it subject to the holding period requirements providing that the stock must not be sold prior to 2 years from the date the

option was granted nor 6 months from the date the stock was acquired." (Emphasis supplied.)

The Senate Report, 3 U.S.Code Cong. & Adm. News 4621, 4690 (1954) [4], states:

"Under present law the tax treatment of the exercise of a 'restricted stock option' after the death of an employee is not provided for even though 'restricted stock options' are transferable by will. It is believed that the untimely death of an employee should not penalize his estate or beneficiaries by denying an option the status of a 'restricted stock option' merely because of the employee's death. For that reason both versions of the bill provide that the exercise of 'restricted stock options' *by the estate or beneficiary of a deceased employee is to have the same tax effect as if the employee had exercised the option * * *.*" (Emphasis supplied.)

■ Plaintiff argued that the court should find from the language of the statute a Congressional intent to grant the "no income" benefit to widows and children of a deceased optionee regardless of whether he qualified for the tax benefit as of the date of death. It has been held, however, that exemptions from taxation may not rest on mere inferences or implications arising from considerations creating some doubt, but that statutory provisions granting exemptions are to be strictly construed. United States v. Stewart, 1940, 311 U.S. 60, 71, 61 S.Ct. 102, 85 L.Ed. 40; Pacific Co. v. Johnson, 1932, 285 U.S. 480, 491, 52 S.Ct. 424, 76 L.Ed. 893.

Concluding, as we do, that the Executor was not entitled to the "no income" benefit granted by subsection 421 (a) (1) when the option was exercised, the difference between the fair market value of the stock when the option was

---

3. Also cited by defendant as H.Rep. No. 1337, 83d Cong., 2d Sess., pp. A153–A154.

4. Also cited by defendant as S.Rep. No. 1622, 83d Cong., 2d Sess., p. 59.

granted and the fair market value when the option was exercised in 1955 became taxable as ordinary income for the year 1955 to the plaintiff, the Executor of the Estate of Harry J. Hirshman. Commissioner v. Smith, 1945, 324 U.S. 177, 65 S.Ct. 591, 89 L.Ed. 830; Commissioner v. LoBue, 1956, 351 U.S. 243, 76 S.Ct. 800, 100 L.Ed. 1142.

### Conclusions of Law

1. This Court has jurisdiction over the parties and over the subject matter under 28 U.S.C. § 1346.

2. The stock option granted to Harry J. Hirshman on June 19, 1951 by United States Steel Corporation was additional compensation and not a gift.

3. The stock option granted to Harry J. Hirshman on June 19, 1951 by United States Steel Corporation was a "restricted stock option" under the provisions of § 421 of the Internal Revenue Code of 1954, 26 U.S.C.A. § 421.

4. The provisions of subsection 421 (d) (6) (A) (i) of the Internal Revenue Code of 1954, pertaining to the exercise of a restricted stock option after the death of an employee-optionee, do not lift the restriction contained in subsection 421(a) that the option must be exercised within three months after the date the optionee ceased to be an employee.

5. When Harry J. Hirshman failed to exercise the "restricted stock option" which he received on June 19, 1951, for the purchase of 450 shares of common stock of United States Steel Corporation within three months of his retirement from National Tube Company, the "no income" benefit granted by subsection 421(a) (1) of the Internal Revenue Code of 1954 was irrevocably lost as to that option.

6. The income received on the exercise of the option should be treated in the hands of the Executor in the same manner as if it had been received by his decedent.

7. The Executor of the Estate of Harry J. Hirshman, upon exercising the option, received ordinary income in the year 1955 to the extent of the difference between the option price and the fair market value of the stock as of the date the option was exercised.

8. The Commissioner of Internal Revenue did not err in his determination that the difference between the option price and the fair market value of the stock as of the date the option was exercised was taxable as ordinary income to the plaintiff Executor.

